Argued July 18, reversed October 2, 1978

STATE OF OREGON, *Respondent,*
*v.*
JAMES MICHAEL FITZGERALD, *Appellant.*
(No. 17-641, CA 10072)

584 P2d 785

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Defendant was convicted by a jury of burglary in the first degree, ORS 164.225. He contends that the court erred in denying his motion to suppress certain evidence.

On April 17, 1977, at approximately 1:30 a.m., the homeowner-victim's dog started barking. When she opened the door to let it out, the dog ran under a boat parked in her garage, and a man ran from behind the boat to the front of the garage. He struggled to raise the overhead garage door and then ran out. The dog and the victim chased the man down the street for half a block until they lost him. She came home and checked the house and garage. After 10 or 15 minutes she called the police and gave them a description of the man. She had seen no vehicle.

At 1:59 a.m. Officer Howell heard a radio report from which he understood that a burglary was in progress at the victim's address, which was in a suburban residential district. He proceeded to the area and arrived within "a minute or so." When he was within an eighth to a quarter of a mile from the scene of the burglary, he turned his lights off "so [he] could [see] somebody moving and nobody could see [him]." He noticed a vehicle coming from the general direction of the burglary, whereupon he made a radio report that he was going to make a stop. He turned his car around, pulled up behind defendant's vehicle and turned on his overhead lights. Defendant immediately stopped his vehicle.

Officer McCraw was also in the vicinity and received the radio report. He arrived three minutes after the initial report and observed that Howell had stopped a vehicle. McCraw briefly observed the suspect and noted that he resembled the radio description, with the exception that he was not wearing a dark jacket. McCraw proceeded to the residence and brought the victim back to observe defendant. She was unsure of his identity until he put on his glasses and

the dark jacket which Howell found in plain view in the vehicle. Before Howell had defendant wear the jacket, he checked the pockets and removed an article that resembled a dental probe tool which could be used to pick locks. The stop lasted approximately 20 minutes.

ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

In order to meet the reasonable suspicion standard, the officer who stops a person must be able to point to "observable facts" which give rise to the inference that criminal activity has occurred and that the person being stopped has committed it. *State v. Valdez,* 277 Or 621, 626, 561 P2d 1006 (1977). "[T]he trial court must determine whether the standard of reasonable suspicion has been met by the objective test of observable facts, not by reliance on the special intuitions of the officer." *State v. Valdez, supra* at 629.

We are concerned only with officer Howell. The record would *not* sustain a finding that *he* had heard a description of the burglar. Five minutes or less after the dispatcher's call, he saw defendant's truck near the victim's residence. It was at a time of night when vehicle traffic in the residential neighborhood was normally very light (although at least two other cars went by soon after the stop), but the vehicle was being operated normally. Those observed facts could not have amounted to more than a basis for a hunch (*i.e.,* a product of the officer's "special intuitions"); the facts were not such as to support a permissible inference that the driver was involved in a crime. Had the victim reported that she had seen a vehicle, the result here would arguably be supportable (*see State v. Denny,* 27 Or App 455, 556 P2d 719 (1976); *rev den* (1977) *State v. Ragsdale,* 34 Or App 549, 579 P2d 286 (1978)); but that was not this case.

The conclusion is unavoidable that officer Howell would have stopped the first vehicle he saw near the scene, whoever was driving. That is not permissible under the statutory formulation of ORS 131.615.

Reversed.

**LEE, J.,** dissenting.

I agree with the majority that the crucial issue in this case is the validity of the stop. However, in my opinion, the majority's reliance on *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977), is misplaced. In *Valdez* the officer had *not* received any report of a crime having been committed before the stop was made—in the instant case Officer Howell *had previously received* a report of a burglary. The dispositive consideration in this case should be the authority granted by the legislature to make the stop.

ORS 131.615(1) provides:

> "(1) A peace officer who *reasonably suspects* that a person has committed a crime *may stop* the person and, after informing the person that he is a peace officer, make a reasonable inquiry. (Emphasis supplied.)

The term "reasonably suspects" is given the following meaning by ORS 131.605(4):

> " 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the *totality of the circumstances* existing at the time and place he acts as authorized in ORS 131.605 to 131.625. (Emphasis supplied.)

Applying the "totality of the circumstances" test, Officer Howell knew that: (1) a burglary had been committed in the immediate vicinity; (2) defendant's vehicle was the *first* that he observed in the area; (3) it was traveling *away* from the scene; (4) it was observed only "a minute or so" after he received the radio report; (5) the vehicle was *less* than one quarter mile from the burglarized residence; and (6) traffic was *light* in this residential district at approximately 2 o'clock in the morning. In sum, these facts provided

[ 477 ]

sufficient "observable facts," under the "totality of the circumstances" test, to justify the stop.

It is inconceivable to me that the legislature, through the use of the foregoing language, intended to restrict a "peace officer" to the extent that he would be precluded from doing exactly what Officer Howell did. Had Officer Howell done less, he would have been derelict in the performance of his duty. Would the majority reach the same result if a murder had been reported?

The myopic view taken by the majority thwarts legislative intent, improperly obstructs effective police work, and corrodes the confidence of peace officers and the public in our ability to make realistic decisions.

I would affirm, so I respectfully dissent.