Argued and submitted March 1, reversed and
remanded for new trial September 29, 1982

STATE OF OREGON,
*Respondent,*
*v.*

RANDALL JAY HAMPTON,
*Appellant.*

(C 80-12-34669, CA A21611)

651 P2d 744

Philip T. Abraham, Judge (Judgment and probation order).

David L. Slader, Portland, argued the cause and filed the briefs for appellant.

Daryl Dodson Wilson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

Thornton, J., dissenting.

## VAN HOOMISSEN, J.

Defendant appeals his convictions for possession of a controlled substance. ORS 475.992. He contends that the trial court erred in denying his motion to suppress. We agree and reverse.

Defendant was employed as a department store security guard. The security agency's dispatcher received a call from a person who purported to be the store's guard and who stated that "he was armed with mace, and that if any of the mannequins moved, he was going to mace them." Five uniformed officers were dispatched to the store about 6:30 a.m. Defendant's supervisor admitted the officers to the store and requested that they locate defendant and ascertain that he was "fit to be on duty." She told them that there should not be anyone inside the store at that time and that defendant was not supposed to come on duty until 7 a.m. Later, after checking the log sheet, she advised the officers that defendant had signed in at 6 a.m.

Ten to fifteen minutes later, the officers observed defendant standing by an elevator. He was immediately identified by his supervisor. He asked the officers "what was going on?" They told him they were there because of the call to the dispatcher. Defendant admitted making the call but said that he had left the mace at home. At that time, defendant was not acting in an unusual manner, and he did not appear to be unstable. He made no attempt to leave. He was not under arrest.

The officers had seen defendant for less than a minute before he was "patted down" by two of them.[1] Each officer felt what he described as a small hard object that he believed might be mace. Both objects were seized. One was a baggie of marijuana wrapped around a pipe; the other was a container containing a substance later identified as hashish. Defendant was then arrested and charged with possession of marijuana and hashish.

---

[1] Officer Blake testified about what the "pat-down" consisted of:

"Just had him put his arms up from his sides — from the outside, so we could pat down his clothes to feel if there was anything that might be Mace on his person."

The state has never contended that the defendant was "stopped" pursuant to ORS 131.615(1).[2] At trial, the state argued that the officers had merely engaged defendant in "some preliminary questioning," *see State v. Kennedy,* 290 Or 493, 498, 624 P2d 99 (1981), and that, under the circumstances, they were justified in frisking him pursuant to ORS 131.625(1).[3]

The trial court stated:

"I'm making a finding that this was a no warrant, investigative search. It was a stop and frisk search."

The state cites no authority for the proposition that ORS 131.625(1) permits frisking any person other than one stopped pursuant to ORS 131.615(1), and we have found none. We conclude that ORS 131.625(1) only permits the frisking of a person "stopped" within the terms of ORS 131.615(1). Defendant was not stopped pursuant to ORS 131.615(1). Therefore, no frisk under ORS 131.625(1) was permissible.

In this court, the state contends that the officers stopped defendant for a "non-criminal investigation," *i.e.,* to determine his mental stability and dangerousness, and that they were justified in frisking him on that basis. The trial judge could not have decided this case on that basis, because the evidence is insufficient to sustain it. The officers testified that when they met defendant he was not acting in an unusual manner and he did not appear to be unstable.

We recognize that under certain circumstances police may detain a person they would not be allowed to stop under ORS 131.615(1). *See, e.g., United States v. Martinez-Fuerte,* 428 US 543, 96 S Ct 3074, 49 L Ed 2d 1116 (1976)(border patrol checkpoint); *Delaware v. Prouse,*

---

[2] ORS 131.615(1) provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

[3] ORS 131.625(1) provides:

"(1) A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present."

440 US 648, 99 S Ct 1391, 59 L Ed 2d 660 (1979) (spot check of driving licenses); *State v. Tourtillott,* 289 Or 845, 850, 618 P2d 423 (1980), *cert den* 451 US 972 (1981) (stop of a motorist at a game checkpoint); *State v. Hanna,* 52 Or App 503, 628 P2d 1246, *rev den* 291 Or 662 (1981) (mere conversation); ORS 426.215 (mental illness emergency). However, when a motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving the validity of the search by a preponderance of the evidence is on the state. ORS 133.693(4).

■ ■ As a last resort, the state suggests that the frisk was justified by the emergency exception to the warrant requirement. That exception applies when "a person is in need of immediate aid." *Mincey v. Arizona,* 437 US 385, 392, 98 S Ct 2408, 57 L Ed 2d 290 (1978); *see State v. Newman,* 292 Or 216, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982). The suggestion is not supported by the evidence here. The sole explanation given by the police for the contact with defendant was to ascertain whether he was "fit to be on duty." The officers made no inquiry of defendant about his mental or medical condition. The state concedes that when the officers contacted defendant there was no apparent emergency.

■ The state argues that the "stop" provisions of ORS 131.615(1) are not all-inclusive, citing *State v. Tourtillott, supra.* Apparently it is the state's contention that whenever there is an encounter there may also be a frisk for weapons. While it is correct that not all encounters must be based on a reasonable suspicion that the person encountered has committed a crime, it is not correct to say that every non-criminal encounter justifies a frisk for weapons. A stop on something less than reasonable suspicion of criminal behavior is justified only by its nonintrusive nature. *State v. Tourtillott, supra.* The police were, of course, free to engage defendant in conversation, to inquire about his circumstances and to investigate his alleged threat to store property. However, absent reasonable suspicion that he had committed a crime, cause to place him under a civil commitment hold or a medical emergency, they were not free to "frisk" him. The frisk was unlawful, and the subsequent search and seizure were likewise unlawful. The motion to suppress should have been allowed.

The authorities cited in the dissent do not compel a different result. In *Ybarra v. Illinois,* 444 US 85, 100 S Ct 338, 62 L Ed 2d 238 (1979), the police were proceeding under an Illinois statute which authorized them to detain and search any person found on premises being searched pursuant to a search warrant. The Illinois Court of Appeals held that the statute was constitutional as applied. The United States Supreme Court disagreed, finding that there was no probable cause to search and that the original pat-down search was not a permissible search for weapons under *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), because it was not supported by a reasonable belief that Ybarra was armed and presently dangerous. Under *Terry,* police may stop a person that they reasonably suspect is about to commit a crime; and if they have reasonable cause to believe that he is armed and presently dangerous, they may make a reasonable frisk for weapons. ORS 131.615, which is narrower, allows a stop only when the police reasonably suspect that a crime *has been committed.* The state does not contend here that a crime had been committed by defendant. In *State v. Riley,* 240 Or 521, 402 P2d 741 (1965), defendant was convicted of being an ex-convict in possession of a firearm. The gun found in defendant's car was discovered before any intrusion into the car by the police. There was in fact no search. There was probable cause to believe that defendant had violated ORS 166.250, making it unlawful without a license to carry· concealed within a vehicle a firearm capable of being concealed upon the person. Furthermore, seizing the gun was reasonably necessary to the officer's safety "in the process of making the arrest." Here, there is no contention by the state that the officers were making an arrest at the time they "patted down" or searched defendant.

Reversed and remanded for new trial.[4]

**THORNTON, J.,** dissenting.

Viewing all the facts and circumstances which confronted the police when they arrived at the scene, there were reasonable grounds for the officers to believe that

---

[4] Defendant also assigns as error the trial court's failure to merge his convictions. *See State v. Ness,* 54 Or App 530, 635 P2d 1025 (1981), *rev allowed* 292 Or 581 (1982). Because we reverse, we need not consider the assignment.

defendant might be armed and presently dangerous. In my view, they were amply justified in frisking him for their own safety.

ORS 131.625(1) provides:

"A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present."

The converse of the above rule was recognized and applied in the recent case of *Ybarra v. Illinois,* 444 US 85, 100 S Ct 338, 62 L Ed 2d 238 (1979), where the court held that because the police did not have a reasonable suspicion that defendant was armed and presently dangerous he could not be frisked, even though the tavern where defendant and others were gathered was subject to a search warrant.

The majority stresses the fact that when the officers first approached defendant he was "not acting in an unusual manner, and he did not appear to be unstable." This, I submit, is not controlling. As the court said in *State v. Riley,* 240 Or 521, 525, 402 P2d 741 (1965), "[t]he officer should be permitted to take every reasonable precaution to safeguard his life in the process of making the arrest."