Argued and submitted March 18, reversed and remanded June 8, reconsideration
denied July 22, petition for review allowed September 7, 1983 (295 Or 617)
See 296 Or 422, 676 P2d 309 (1984)

# STATE OF OREGON,
*Respondent,*

*v.*

# DEAN FRANKLIN PAINTER,
*Appellant.*

## (229781; CA A25981)

664 P2d 424

Michael B. Mendelson, Portland, argued the cause and filed the brief for appellant.

Margaret E. Rabin, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals a conviction for unlawful possession of a weapon. ORS 166.250. He assigns as error the exclusion of certain testimony[1] and denial of a motion to suppress evidence resulting from an allegedly illegal stop. The state concedes error regarding the excluded testimony, and we therefore remand for a new trial. However, we conclude that the denial of the motion to suppress was not error.

The facts regarding the encounter and the search are undisputed. Deputy Sheriff Lambert was on patrol in an unmarked vehicle at approximately 3 a.m. As he drove down an unlighted alley behind several commercial establishments, he met defendant walking in the alley and asked him what he was doing there. Lambert was not aware of any crime having been committed in the area at that time. Defendant replied that he had had car trouble, his car had heated up and he was looking for a telephone to call for help. Lambert asked for identification, and defendant produced an expired Virginia driver's license and several credit cards. Lambert patted defendant down for weapons and found none. He ran a "radio check" on defendant, which came back "clear." He then asked defendant the make and location of his car. Defendant responded by giving the requested information. Lambert then left and radioed another officer, who located defendant's vehicle.

Lambert went to the vehicle, shined a flashlight into the interior and saw what he concluded was a pistol sticking out from under the front seat on the driver's side of the car. Lambert and the other officer kept the car under surveillance. When defendant returned to the vehicle and drove away, he was stopped and arrested for driving while his operator's license was suspended[2] and for carrying a concealed weapon. The gun was seized following his arrest.

---

[1] In the excluded testimony, defendant sought to prove by the testimony of his girl friend that she owned the car, that she had been driving it earlier that evening and had been the last person to handle the gun. She would also have testified that the gun was always kept in view on the floor. The state concedes that the testimony was relevant to the weapon charge.

[2] The charge of driving while suspended was scheduled for a separate trial.

Defendant contends that under ORS 131.615, Article I, section 9 of the Oregon Constitution and the Fourth Amendment the encounter between him and Lambert was an unlawful stop from its inception. He argues that the information respecting the make and location of his vehicle was obtained as a result of the illegal stop and that that information tainted the subsequent search of his vehicle.[3]

The initial and dispositive question is whether the alley encounter was a stop, which could be made only on the basis of a reasonable suspicion that defendant was involved in criminal activity. ORS 131.605(5) defines a stop as

"* * * a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

In *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981), the court said that because ORS 131.605(5) is based in part on the rationale of *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), the statute should be given an interpretation consistent with *Terry.*[4] The analysis of whether a stop has occurred is the same under the constitutional and statutory provisions. Determination of whether a "stop" has occurred will depend largely upon the particular facts of each case. The analysis in *Terry* was based on a conclusion that the Fourth Amendment governs seizures of the person. A detention of a person short of a traditional arrest is a seizure and, pursuant to *Terry,* must be based on a reasonable suspicion of criminal activity. *Davis v. Mississippi,* 394 US 721, 89 S Ct 1394, 22 L Ed 2d 676 (1969). A detention constituting a stop, *i.e.,* a seizure, occurs only when a peace officer by means of physical force or show of authority has in some way restrained the liberty of the individual. In making that determination, the objective facts must be assessed to determine when and if a seizure of the individual occurred.

*United States v. Mendenhall,* 446 US 544, 100 S Ct 1870, 64 L Ed 2d 497 (1980), gave substance to the analytical

---

[3] Defendant does not challenge the frisk, nor does he contend that the officer's investigation exceeded permissible limits. ORS 131.615.

[4] We note, however, that ORS 131.615 is more restrictive than *Terry* in its requirement that there be a reasonable suspicion that the person stopped has committed a crime. The *Terry* analysis permits a stop based on a reasonable suspicion that the person has committed or is about to commit a crime. *See State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977).

framework for determining whether a seizure has taken place. The defendant aroused the suspicions of two federal drug enforcement agents as she walked on an airport concourse. They approached her, showed their identification and asked to see her airline tickets and identification. She complied and subsequently consented to a search of her person that produced narcotics. The Court found that there was no basis for a reasonable suspicion that the defendant was involved in criminal activity but concluded that the encounter was not a seizure. The Court said:

> "On the facts of this case, no 'seizure' of the respondent occurred. The events took place in the public concourse. The agents wore no uniforms and displayed no weapons. They did not summon the respondent to their presence, but instead approached her and identified themselves as federal agents. They requested, but did not demand to see the respondent's identification and ticket. Such conduct, without more, did not amount to an intrusion upon any constitutionally protected interest. The respondent was not seized simply by reason of the fact that the agents approached her, asked her if she would show them her ticket and identification, and posed to her a few questions. * * *" 446 US at 555.

It is clear from *Mendenhall,* and as noted in *State v. Kennedy, supra,* that a police officer may approach a citizen, identify himself as an officer and ask some preliminary questions without making a "stop." *See also State v. Hanna,* 52 Or App 503, 628 P2d 1246, *rev den* 291 Or 662 (1981). It is also clear that an encounter which is initially not a seizure may become one if the person is subsequently detained. *See, e.g., Brown v. Texas,* 443 US 47, 99 S Ct 2637, 61 L Ed 2d 357 (1979).

In this case, the officer approached defendant when they met in the alley. He asked defendant what he was doing there, and defendant responded. He requested identification, which was produced. As indicated in *Mendenhall,* these facts, without more, do not constitute a seizure or "stop." Defendant's response to the officer's initial question would reasonably lead to suspicion that defendant had been driving a vehicle. The identification defendant produced included an expired license. The officer could thus reasonably conclude that defendant had been driving a vehicle with an expired operator's license, a Class B traffic infraction. ORS 482.040(1). At that

juncture, the officer had a basis for detaining defendant under ORS 131.615 and ORS 484.353(2). The latter statute provides:

"A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

The officer detained defendant by a show of force when he frisked him for weapons after the initial inquiry and request for identification. Up to that point there had been no seizure of defendant.

Defendant was momentarily detained after the frisk while the officer ran the radio check and made an appropriate inquiry about the make and location of defendant's vehicle. The information concerning his vehicle which defendant challenges was obtained during a lawful stop and detention. Having lawfully obtained the information, the officers were entitled to use it to locate the vehicle and to discover the weapon. Defendant does not contend that the location and seizure of the weapon was invalid, independent of the alleged unlawful stop.

Defendant cites *Brown v. Texas, supra,* and contends that the facts of that case, leading to the holding that the stop was unlawful under *Terry,* are indistinguishable from the facts here. In *Brown,* the defendant was approached in an alley by two police officers and asked to identify himself and explain what he was doing there. Defendant refused to identify himself and angrily asserted that the officers had no right to stop him. He was then forcibly detained, frisked and arrested for violation of a Texas statute that made it a crime for a person to refuse to give his name and address to an officer who had lawfully stopped him. In *United States v. Mendenhall, supra,* the Court explained its holding in *Brown.* It said that up to the time the officers forcibly detained and frisked the defendant there was no seizure. The seizure occurred when he was detained and frisked. Because there was no factual basis for a

reasonable suspicion that the defendant was involved in criminal activity, the detention was unlawful and the resultant conviction for refusal to identify himself was reversed. The decision in *Brown* supports our conclusion in this case.

The court did not err in denying defendant's motion to suppress.

Reversed and remanded for new trial.