STATE OF OREGON,
*Respondent,*

*v.*

RONALD LEROY TEAL,
*Appellant.*

(C86-12-36713; CA A46524)

765 P2d 827

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Edwin N. Norton, Certified Law Student, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Buttler, P. J., dissenting.

## WARREN, J.

Defendant appeals his conviction for driving while suspended. ORS 811.175. He assigns as error the trial court's denial of his motion to suppress evidence obtained after he had been stopped. He asserts that the stop was illegal. We disagree and affirm.

At approximately 4 a.m. on December 12, Officer Peterson responded to a radio call reporting an audible alarm in the area of N.E. 14th and Killingsworth in Portland. Peterson associated the audible alarm with a building break in.[1] Within two minutes, Peterson approached the area where the alarm had been heard and saw defendant's vehicle in a corner parking lot at the northeast corner of N.E. 15th and Killingsworth. The business where the alarm had gone off was located on the north side of the 1400 block of Killingsworth. Thus, defendant was in a parking lot on the same side of Killingsworth and within two blocks of the location of the alarm.

The immediate area was commercial with no businesses open at that hour. There were no other cars or persons nearby, and the closest open business was at least a mile away. As the patrol car approached, defendant turned on his lights and drove out of the parking lot onto 15th and away from Killingsworth. The officer followed defendant about a quarter mile. He noticed nothing suspicious about the way defendant was driving or acting. He stopped him and asked for his

---

[1] The prosecutor asked Petersen to define an audible alarm during the pretrial motion to suppress the evidence and during the trial. At the pretrial hearing he asked Peterson:

"Q Okay. Now what do you mean about an audible alarm?

"A It's something where it's state—you can hear it from the outside—it has a recycler to turn itself off."

During the trial the prosecutor asked:

"Q Okay. What's, what's audible alarm mean to you?

"A Audible versus a silent alarm. Silent is if the person breaking in would probably be unaware that they've actually tripped or activated an alarm. There's no noise going off. The audible alarm in this case was something that probably could be heard while inside the building and also outside the building by people going by, neighbors and things like that."

At no time during the pretrial motion or trial did either attorney or any witness suggest that the audible alarm could be other than a building burglar alarm.

license. Defendant first gave a false name and then gave his correct name and said that he had no license. The officer ran a check and learned that defendant's license was suspended. He argues that the officer did not have reasonable suspicion that a crime had been committed and that the stop was therefore illegal.

ORS 131.615(1) provides that an officer who reasonably suspects that a person has committed a crime may stop the person and make a reasonable inquiry. Reasonable suspicion to justify a stop requires that the officer be able to point to "specific and articulable facts" that indicate that "there is some type of criminal activity afoot and that this particular person is somehow involved." *State v. Valdez,* 277 Or 621, 625, 626, 561 P2d 1006 (1977). The state contends that the officer's knowledge that perpetrators commonly leave the scene of a crime by car, combined with the late hour, the commercial location and defendant's act of driving away combined to create reasonable suspicion that a crime had been committed and that defendant was involved.

If there is a reasonable basis to suspect that a crime has been committed, such as an alarm indicating a burglary in progress, then the unlikely coincidence that a person would be at a certain place at a certain time may be sufficient to create a reasonable suspicion that the person committed a crime. *See State v. Schedler,* 47 Or App 181, 614 P2d 591, *rev den* 290 Or 149 (1980). In *Schedler* an officer who was parked in front of a police station at 1:30 a.m. heard the sound of breaking glass behind the station. The officer reasonably assumed that the breaking glass was associated with a crime, either vandalism or a burglary. Seconds later he saw a car driven by the defendant leaving an alley that led to the police parking lot where the sound had come from. The proximity of the defendant to the suspected crime and the improbability that the defendant would be driving out of that alley at that time of night were enough to create reasonable suspicion that the defendant had committed a crime.

In contrast, in *State v. Fitzgerald,* 36 Or App 473, 584 P2d 785 (1978), an officer heard a radio report around 2 a.m. from which he understood that a burglary was in progress in a residential neighborhood. Within a minute or two he was within a quarter mile of the burglary scene and stopped a

vehicle which was being operated normally but was coming from the general direction of the burglary. Traffic was very light, but two cars came by after the stop. We held that the defendant's location, the time of night and the level of traffic flow did not support a reasonable suspicion that the defendant was responsible for the suspected crime. It was not improbable that the defendant could have been going to or coming from one of the other residences in the neighborhood. We held that more facts were needed to link the defendant to the crime, such as a witness's description of the defendant, a report that a car was seen in connection with the burglary or suspicious actions by the defendant.

Here, the report of the sounding of the audible alarm justified the officer's belief that a crime had been committed. Shortly after the report, the officer saw defendant turn on his car lights and drive away from a parking lot near the business where the alarm had gone off. It was 4 a.m. in a commercial area with no open businesses and no other traffic. It was reasonable for the officer to suspect that a crime had been committed and that defendant was involved. The motion to suppress was properly denied.

Affirmed.

**BUTTLER, P. J.,** dissenting.

The officer may have had a reasonable suspicion that a crime had been committed; however, he had no basis for reasonably believing that *defendant* had committed it.

The majority justifies the stop by stating that "the unlikely coincidence that a person would be at a certain place at a certain time may be sufficient to create a reasonable suspicion that the person committed a crime." 94 Or App at 384-85. Under that rationale, *anyone* who happened to be in the vicinity of a suspected burglary could be stopped by the police and detained for questioning.

That is not the law. Under ORS 131.615, the question is "whether the standard of reasonable suspicion has been met by the objective test of observable facts, not by reliance on the special intuitions of the officer." *State v. Valdez,* 277 Or 621, 629, 561 P2d 1006 (1977). In this case, as in *State v. Fitzgerald,* 36 Or App 473, 584 P2d 785 (1978), which the majority accurately summarizes, 94 Or App at 384, there were no observable

facts that permit the inference that defendant had committed a crime. The observed facts that defendant's car was parked a block or two from the scene of the suspected burglary, and that the car's lights were turned on when the car was driven off in a lawful manner when the officer approached the scene, "could not have amounted to more than a basis for a hunch (*i.e.,* a product of the officers' 'special intuitions')." *State v. Fitzgerald, supra,* 36 Or App at 476.

Accordingly, I dissent.