Argued and submitted June 18, 2013, reversed and remanded July 23, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DONN TRAVERS EASTON,
*Defendant-Appellant.*

Washington County Circuit Court
C110669CR, C102366CR;
A149728 (Control), A149729

332 P3d 315

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael A. Casper, Deputy Solicitor General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Christina M. Hutchins, Senior Assistant Attorney General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals from a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894, and a judgment finding him in violation of his probation for committing that offense. He assigns error to the trial court's denial of his motion to suppress evidence discovered when officers detained him without a warrant. We conclude that, on the facts presented, officer safety concerns did not justify the actions the officers took to seize defendant without a warrant and that, but for that seizure, the officers would not inevitably have discovered the evidence at issue. Accordingly, we reverse and remand.

We review the trial court's denial of a motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are bound by the trial court's findings of historical fact when there is constitutionally sufficient evidence in the record to support those findings. *Id.* When the trial court has made no findings, we presume that the court found the facts in a manner consistent with its ultimate conclusion.

The following facts are undisputed. At about 4:30 a.m., Officers Blood and Cristofaro responded to a 9-1-1 call reporting that a woman was outside another woman's apartment door offering her a firearm. When the officers arrived, they encountered a woman, who appeared to be under the influence of methamphetamine, lying on the ground in front of the apartment with a 9mm gun a few feet in front of her. The officers seized the gun and arrested the woman, whom Blood recognized as Wisman. She told the officers that her houseguest, defendant, had given her the gun and that he was still in her apartment, which Blood knew was less than 100 feet across the parking lot. Blood testified that it was his experience that, "where there's one weapon, there's often more than one" and, based on their proximity to the apartment, he was concerned for his safety. Specifically, the officers testified that they were afraid that someone could shoot them from inside the apartment because the door was wide open and an interior light was on. Upon request, Wisman gave her consent to a search of her apartment to "make sure everyone was safe and secure"

and to determine if there were additional weapons in the apartment. However, the officers testified that they were not investigating defendant for a crime.

Standing outside, the officers called into Wisman's apartment several times to announce their presence, but received no answer. The officers then entered and discovered defendant lying on his stomach on a bed in a bedroom with the door open and the light on. Standing outside the bedroom door, the officers announced their presence again, but defendant, who appeared to be passed out, did not respond. Knowing that defendant was the person who had given Wisman the gun, the officers were concerned that he might be "faking passed out" and "wanted to make sure that he was secure" because they "didn't know if he was hiding weapons underneath his body[.]" As the officers detained defendant in handcuffs, he woke up and struggled slightly. The officers then rolled defendant over and found a small clear baggie that had been underneath his body. The crystal-like substance inside the baggie later tested positive for methamphetamine.

After being charged with unlawful possession of methamphetamine, defendant moved to suppress the evidence obtained as a result of the search and seizure. Defendant argued that once the officer had Wisman in custody and had secured the gun, the police had no reason to enter the apartment. Furthermore, defendant contended that, once the police saw him lying on the bed, any officer safety justification dissipated and the police should have left the apartment. The trial court denied that motion, concluding that the officers had consent to enter the apartment and that "the issue of can [the police] pick [defendant] up, can they roll him over, ends up being defeated by the fact that they would have inevitably discovered the methamphetamine under his body." Ultimately, defendant waived his right to a jury trial and, in a stipulated facts trial, the court found him guilty of unlawful possession of methamphetamine and, consequently, in violation of his probation.

On appeal, defendant assigns error to the trial court's denial of his motion to suppress. He contends that the officers' actions in detaining and physically moving him

amounted to an unlawful stop and seizure that was not justified by officer safety concerns because it was not objectively reasonable to believe that defendant posed an immediate threat of causing serious physical injury.[1]

Article I, section 9, of the Oregon Constitution protects against warrantless searches and seizures.[2] However, a police officer may take reasonable steps to protect herself or others, including conducting a warrantless search or seizure, "if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based on *specific and articulable facts,* that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *State v. Bates,* 304 Or 519, 524, 747 P2d 991 (1987) (emphasis added). The state bears the burden of establishing that, based on the totality of the circumstance at the time, "the officer subjectively believed that a defendant posed an immediate threat of serious physical injury and that the officer's belief was objectively reasonable." *State v. Zumbrum,* 221 Or App 362, 366, 189 P3d 1235 (2008). Although we should not "uncharitably second-guess the split-second decisions of officers who often work under dangerous, potentially deadly circumstances[,] * * * intuition and generalized fear do not constitute reasonable suspicion of an immediate threat that will justify a warrantless" seizure. *Id.* (internal quotations and citations omitted). Rather, there must be "specific and articulable facts to justify the officer's conclusion that a *particular person* presents an immediate threat of harm." *Id.* at 366-67 (emphasis added).

In this case, the circumstances after Wisman consented to a search of her apartment were as follows: the officers had seized a handgun from Wisman, who appeared to be under the influence of methamphetamine, and had

---

[1] Defendant also contends that the officers' actions were not justified by reasonable suspicion or the emergency aid exception to the warrant requirement. However, we do not address those arguments, because we accept the state's concession that the officers did not have reasonable suspicion and that the state failed to prove that a true emergency existed.

[2] Defendant also argues that his rights were violated under the Fourth Amendment to the United States Constitution; however, because we conclude that defendant was unlawfully seized under the Oregon Constitution, we do not reach that argument.

arrested her; Wisman told the officers that defendant had given her the handgun; the officers knew that defendant was currently in Wisman's apartment; the door to Wisman's apartment was open and the lights were on inside; the officers were concerned that someone could shoot them from the apartment; and the officers did not know whether other people or weapons were inside the apartment. Upon entering and discovering defendant, the officers were concerned that defendant was faking sleep and that he was hiding weapons underneath his body.

Based on those circumstances, we conclude that the officers did not have an objectively reasonable basis for believing that defendant posed an immediate risk of serious physical injury. Upon entering the apartment, the officers did not have any information about defendant that would cause them to believe that he might be violent. *See Zumbrum*, 221 Or App at 369 (determining that, among other factors, the fact that there was no evidence in the record of whether the defendant had a history of violent behavior detracted from a reasonable belief that the defendant presented an immediate threat of serious physical injury). The state contends that because, Wisman was under the influence of methamphetamine, "defendant could also be impaired and, if armed, capable of causing serious injury." However, the only basis the officers had for suspecting that defendant was under the influence of methamphetamine was his association with Wisman, and "[t]he mere fact that a person associates with another person involved with methamphetamine does not support a reasonable suspicion that that person is also involved with methamphetamine." *Zumbrum*, 221 Or App at 369.

Furthermore, when they encountered defendant, it was about 5:00 a.m. and defendant was lying face down on the bed. There is no evidence in the record that defendant made any movements or that his hands were concealed. Although defendant did not respond to the officers and the officers were concerned that defendant was pretending to be asleep, defendant was not required to respond to the officers. *See State v. Hanna*, 52 Or App 503, 508 n 4, 628 P2d 1246, *rev den*, 291 Or 662 (1981) ("Police officers enjoy the liberty enjoyed by every citizen to address question to other persons,

although ordinarily the person addressed has an equal right to ignore his interrogator and walk away."). Blood also testified that he was concerned that defendant had additional weapons because he was trained that, "where there's one weapon, there's often more than one"; however, the officers did not have any articulable facts to indicate that defendant did in fact have additional weapons. The only known weapon at the time was the handgun that the officers had seized from Wisman outside of the apartment. As we noted in *State v. Bentz*, 211 Or App 129, 137, 158 P3d 1081 (2007), although it might be prudent for an officer to make that type of assumption regarding the presence of additional weapons, "where no articulable facts support the assumption, it is not a sufficient basis for a warrantless search."

Although we do not "uncharitably second-guess" officers' "life-or-death decisions," *Bates*, 304 Or at 524, based on the facts in this case, we conclude that the state has not demonstrated that there were specific and articulable facts indicating that defendant, lying alone and unresponsive on a bed at about 5:00 a.m., presented an immediate threat of serious physical injury to the officers. Accordingly, we conclude that the officers violated defendant's constitutional rights when they seized him without a warrant.

The state argues that, "even if officer safety concerns did not justify handcuffing defendant, those concerns justified questioning defendant about additional weapons" and, upon waking defendant, the officers would inevitably have discovered the methamphetamine. We understand the state to be acknowledging implicitly that any actions that the officers would have taken to prompt defendant to move—even by means short of handcuffing him—would have constituted a stop that would have been justified by officer safety concerns.[3] We disagree, however, with the

---

[3] We find support for our understanding of the state's argument in the record. In the state's response to defendant's motion to suppress, the state argued that "regardless of how the police conducted the stop," (emphasis added), it was justified by officer safety concerns. Accordingly, we assume for purposes of our analysis that the state is conceding that if officers had woken and questioned defendant without handcuffs, the officers still would have "stopped" defendant. The state does not contend in its brief that if the officers had woken and questioned defendant without handcuffs that encounter would have been a "mere conversation" rather than a "stop."

state's argument that such actions were justified under the circumstances presented here.

As noted, Article I, section 9, allows officers "to take steps *reasonably necessary* to their safety." *Bates*, 304 Or at 523 (emphasis added). The totality of the circumstances here do not establish that waking defendant was reasonably necessary to officer safety. As noted above, the officers testified that they did not believe that defendant had committed or was about to commit a crime when they first encountered him, nor does the record contain evidence about defendant or his position on the bed that indicated a risk to the officers. Although the officers may have been entitled to communicate with defendant, as we noted above, defendant was not required to respond to the officers. As also noted above, the state implicitly acknowledges that the officers could not have taken the further step of waking defendant, thus prompting him to move, without stopping him. Under the circumstances presented by this case, that acknowledgement is appropriate. Because no objectively reasonable officer-safety concern would have justified the officers' act of waking defendant by some means short of handcuffing him, any such stop would have been unlawful.

Accordingly, because the discovery of the methamphetamine resulted directly from the unlawful seizure of defendant and it would not inevitably have been discovered, the trial court erred in denying defendant's motion to suppress. The state concedes that if we find that the court erred in denying defendant's motion to suppress, we should also reverse and remand the judgment finding defendant in violation of his probation. We accept that concession and, accordingly, reverse and remand both judgments.

Reversed and remanded.