Argued and submitted May 30, 2014, affirmed March 4, 2015

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

GEOFFREY STAHEL EASTMAN,
*Defendant-Respondent.*

Washington County Circuit Court
D121315M; A153595

345 P3d 493

Doug M. Petrina, Senior Assistant Attorney General, argued the cause for appellant. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Josh Crowther, Chief Deputy Defender, Office of Public Defense Services, argued the cause for respondent. On the brief were Thomas Ifversen and Ifversen Law Group P.C.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

Armstrong, P. J., dissenting.

## NAKAMOTO, J.

The trial court suppressed the evidence of defendant's intoxication, which a deputy sheriff had discovered during a stop of defendant's truck, and then dismissed the case. Pursuant to ORS 138.060(1)(c), the state appeals the order suppressing evidence and, pursuant to ORS 138.060(1)(a), it appeals the dismissal. The appeal turns on whether the trial court correctly concluded that the deputy lacked reasonable suspicion that defendant had thrown a cigarette out of his window and thereby committed the crime of throwing lighted material, ORS 476.715.[1] We affirm.

The facts presented at the suppression hearing are spare and undisputed. The state presented the testimony of Washington County Deputy Sheriff Wilson. Wilson had been a full-time police officer since 2004, a reserve deputy before that, and used to work as a commercial truck driver and inspector. On March 17, 2012, at approximately 11:30 p.m., Wilson and Deputy Greene were responding to a "hit and run" investigation. They were driving in separate patrol cars southbound on S. W. Oleson Road, south of Beaverton-Hillsdale Highway, through some curves, with Wilson following Greene's car. In front of Greene was defendant's truck. The three vehicles were within approximately 50 feet of one another. It was dark, but the roadway was lit by streetlights, and the pavement was dry. There was no vehicle in front of defendant's truck at the time; however, Wilson was unable to confirm the absence of vehicles on the road other than defendant's truck and the patrol cars, such as vehicles coming from the opposite direction. Wilson then observed a "burst of orange embers" emerge from under the rear, driver's side of Greene's car near the tire. Wilson could not tell whether Greene had run over the material, nor could Wilson tell whether the material had hit the ground and was tumbling. He did not see anything come out of defendant's window. Wilson had stopped others for throwing cigarettes

---

[1] In relevant part, ORS 476.715 provides:

"No one shall, at any time, throw away any lighted tobacco, cigars, cigarettes, matches or other lighted material, on any forestland, private road, public highway or railroad right of way within this state."

Throwing lighted material is a Class B misdemeanor. ORS 476.990(5).

out of their vehicle windows and testified that what he saw was "very similar to somebody discarding a cigarette out their window and it hitting the ground." Wilson concluded that what he observed was not consistent with sparks from a dragging chain, and he instead believed that defendant had thrown a lit cigarette out of his window.

Wilson then stopped defendant's truck and observed signs that defendant was intoxicated. Wilson proceeded to conduct an investigation for driving under the influence of intoxicants (DUII). After defendant failed field sobriety tests, Wilson arrested him for DUII, ORS 813.010, and for throwing lighted material on a public highway, ORS 476.715, both misdemeanors.

Defendant moved to suppress the evidence of his intoxication, arguing that Wilson lacked reasonable suspicion to stop him. The trial court made the following findings regarding the reasonableness of Wilson's belief that defendant had thrown a lit cigarette from his truck:

> "All I have based upon [the] throwing of the cigarette is that he was following, he was rushing to an investigation of a hit and run, that they are following the defendant's car, he is the second vehicle behind and only is able to see whatever happened after the first patrol car passes that cigarette. That's all he can give me.
>
> "* * * * *
>
> "I make the findings that it's dry, it's clear, there's—it's not been raining, so a cigarette won't necessarily just simply p[e]rish once it's been tossed, it can sit there."

The trial court granted the motion, noting that there was no evidence that the cigarette had not come from the first police car, there was "a cigarette on the ground, it could have come from literally anywhere[,] and the officer says he cannot tell where it came from." The trial court also observed that the officer driving directly behind defendant was in a better position to see whether defendant had thrown a cigarette out his window but had not testified at the hearing. The court also explained that, although non-criminal explanations would not defeat the reasonableness of an officer's suspicion, that principle "doesn't help" given

the evidence presented at the suppression hearing: "If we had some other evidence, fine, but just looking and all of a sudden seeing a tire hit and making an assumption of where that [burning material] possibly came from, that doesn't get you there." The state then requested 30 days in which to determine whether it would appeal the ruling. The court denied the state's request and dismissed the case.

In its first assignment of error, the state challenges the court's ruling granting the motion to suppress. The parties do not dispute the basic legal standards governing the required basis for the stop. When Wilson seized defendant under Article I, section 9, of the Oregon Constitution by stopping his car, Wilson had to have a basis for the stop that, in this case, at least amounted to reasonable suspicion that defendant had committed a crime. Under ORS 131.605(6), "reasonably suspects" means

> "that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625."

Thus, the officer "must subjectively believe that the person stopped has committed a crime, and that belief must be objectively reasonable." *State v. Williams*, 178 Or App 52, 58, 35 P3d 1088 (2001). Whether the officer's subjective belief that the defendant has committed a crime is reasonable hinges on an "objective test of observable facts." *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993). The circumstances presented to the officer must support a reasonable inference that the person has committed a crime, *id.*, and the significance of any of the observable facts may be enhanced by an officer's special knowledge of the way a particular crime is committed, *State v. Ehret (A111248)*, 184 Or App 1, 9, 55 P3d 512 (2002). Whether Wilson had reasonable suspicion to justify the stop is a question of law. *State v. Walker*, 181 Or App 548, 551, 47 P3d 65 (2002).

Although in agreement on those basic legal standards, the parties dispute both the nature of the trial court's ruling and, consequently, whether the ruling was correct. In the state's view, the trial court simply fell back on possible noncriminal explanations for what had occurred when

making its ruling, contrary to cases in which we have held that the mere possibility of noncriminal explanations for the facts observed will not defeat the reasonableness of an officer's suspicion. *E.g., State v. Braukman,* 246 Or App 123, 127, 265 P3d 28 (2011), *rev den,* 351 Or 675 (2012); *State v. Wiseman,* 245 Or App 136, 140-41, 261 P3d 76 (2011). The state contends that the trial court erred and that Wilson's belief that defendant had thrown a lit cigarette out of his truck window was objectively reasonable. The state urges that "reasonable suspicion" is not a demanding standard and argues that, by "applying common sense" and "the process of elimination," Wilson reasonably inferred that defendant had thrown a lit cigarette out of his car window, despite other possible reasons for the burst of orange embers near the back tire of Greene's patrol car that Wilson had observed. The state also relies on Wilson's testimony that he had arrested people for throwing lighted material before and that what he saw in this case looked similar to a lit cigarette thrown onto pavement.

Defendant, on the other hand, supports the trial court's ruling by arguing that the court properly understood that this was a case in which the state's evidence was insufficient to conclude that Wilson drew a reasonable inference. He argues that, because the state merely established the proximity of defendant's car to the burst of orange embers near Greene's rear tire and then, as the trial court concluded, proffered "speculation" that defendant had thrown a lit cigarette, the trial court correctly granted the motion. In other words, defendant casts the trial court's ruling as one focused on drawing the line between a police officer's reasonable inference and mere speculation that a defendant who happens to be in the area has committed a crime.

Given the trial court's findings and its explanation, which centered on the quantum of evidence presented, we agree with defendant's understanding of the ruling. The trial court was focused on whether there was some evidence to support a reasonable inference that connected defendant to the flash of burning embers given the lack of evidence that defendant had engaged in any suspicious conduct. Thus, as defendant argues, this case is akin to those involving a

defendant's mere proximity to an event that involves criminal activity and the sufficiency of the evidentiary support for a connection between the defendant and the suspected crime. On that point, the state cites *State v. Teal*, 94 Or App 381, 765 P2d 827 (1988), to argue that the evidence was sufficient; however, the state's reliance on *Teal* is unpersuasive given the facts here.

In *Teal*, a police officer responded within two minutes to a radio call of an audible alarm at a business located in a commercial area of Portland at four o'clock in the morning; the officer saw the defendant drive away from a parking lot two blocks away and on the same side of the street as the location of the alarm; and there were no other cars or persons nearby and no businesses in the area open. 94 Or App at 383. We held that the officer had reasonable suspicion to stop the defendant because he reasonably believed that the defendant was involved in the apparent burglary given that it was early in the morning, businesses were not open, and there was no other traffic. *Id.* at 385. The state argues that this case is like *Teal* because the only person in the area of the burning material was defendant.

However, unlike in *Teal*, the evidence in this case did not establish the absence of anyone else in proximity to the burning embers. The state failed to establish that there was no oncoming traffic on S. W. Oleson Road or that no one else was on the road. Instead, the state merely established that there was no vehicle in front of defendant and that there was another car—Greene's car—between defendant's truck and Wilson's car. The trial court correctly concluded that the state had not provided sufficient evidence at the suppression hearing to establish that Wilson had a reasonable belief that it was defendant who had thrown lighted material, perhaps a cigarette, onto the road.

It follows that the trial court correctly granted defendant's motion to suppress. In view of our disposition on the state's first assignment of error, we need not reach the state's second assignment of error challenging the trial court's dismissal of the case.

Affirmed.

**ARMSTRONG, P. J.,** dissenting.

A Washington County deputy sheriff stopped defendant based on the deputy's suspicion that defendant had thrown a lit cigarette out of the window of the pickup that defendant was driving. Defendant moved to suppress the evidence that the state had obtained as a result of the stop, contending, among other things, that the facts known to the deputy were insufficient to create a reasonable suspicion that defendant had thrown a lit cigarette from his pickup. The trial court granted the suppression motion, and the majority affirms that ruling. Because I believe that the facts establish that the deputy's suspicion was reasonable, I respectfully dissent.

Two Washington County sheriff deputies, Greene and Wilson, were driving southbound on S.W. Oleson Road in separate patrol cars at roughly 11:30 p.m. on March 17, 2012, in response to a call about a hit-and-run accident. Wilson was following Greene who, in turn, was following a pickup driven by defendant. Wilson testified that their three vehicles were the only vehicles that he saw traveling in that direction:

"Q. Was there a lot of traffic that time of night?

"A. No, we were the only three cars—there was nobody in front of [defendant]."

As the three vehicles proceeded together, Wilson saw a burst of embers appear from beneath Greene's car. Wilson testified on direct examination at the suppression hearing:

"Q. Alright, what happened next?

"A. At one point I saw a burst of orange embers come out from the rear of Deputy Greene's vehicle or from like under one of the tires and something that's very similar to somebody discarding a cigarette out their window and it hitting the ground.

"Q. Was it readily apparent that [defendant] had thrown a cigarette out the window of his truck?

"A. Yeah, I didn't [specifically] see it come out of his window, *but that's what it looked like*; I've stopped dozens of people for that."

(Emphasis added.) Wilson elaborated on that testimony on cross-examination:

"Q. Okay, deputy when you testified that you saw scattering of embers?

"A. Correct.

"Q. Could you tell what had caused that explosion of embers?

"A. The only thing I would relate it to would be somebody discarding a cigarette. It was not the same as—I was a commercial truck inspector for years and I've seen sparks come off of like chains dragging, connector chains, and it was not similar to that. *It was what I know to be a cigarette coming out.*

"Q. Okay, and so assuming [that] we all know what the scattering of cigarette ashes looks like at night, but you testified that it came off of the rear tire of the vehicle in front of you, was it—was that that vehicle had run over the cigarette or was it actually a cigarette that hit the ground and was tumbling?

"A. I couldn't tell if Deputy Greene had run over it, or if it was just off the side of his tire or whatever, it was right there as I was looking at the rear of his vehicle down at the roadway of Deputy Greene's vehicle where I saw it, come out near that rear tire, so I couldn't say either way."

(Emphasis added.)

In summary, Wilson saw a burst of embers appear from behind the driver's side of Greene's patrol car, which he believed was caused by a burning cigarette that defendant had thrown out the driver's side window of his pickup. Although Wilson did not see defendant throw a lit cigarette from the window of his pickup, Wilson connected defendant to the cigarette because it appeared to Wilson that the cigarette had just been thrown on the road and there were no vehicles that Wilson could see ahead of defendant that could have been the source of the cigarette.

The majority rejects those facts as sufficient to create a reasonable suspicion that defendant had thrown a lit cigarette from his pickup. According to the majority, the state did not present evidence to exclude the possibility

that the cigarette had been thrown from a vehicle other than defendant's pickup, either one traveling in the opposite direction from defendant or one too far ahead of defendant to be seen by Wilson. Because it did not exclude that possibility, all that the state established was defendant's proximity to the burning cigarette, which the majority says was insufficient to create a reasonable suspicion that defendant was the source of the cigarette. 269 Or App at 508.

That it is conceivable that the cigarette could have been thrown from a vehicle other than defendant's pickup establishes, at most, that there could be an innocent explanation—that is, one that does not connect defendant to the burning cigarette—for the facts that led Wilson to suspect that defendant had thrown the cigarette from his pickup. It is well established, however, that the existence of an innocent explanation does not detract from an officer's belief that the facts create a suspicion of criminal conduct by a defendant. *See, e.g., State v. Braukman*, 246 Or App 123, 127, 265 P3d 28 (2011), *rev den*, 351 Or 675 (2012). Here, Wilson saw a burst of embers that he believed came from a cigarette that had just been thrown on the road by defendant, that is, by the person driving the pickup that was ahead of Greene's vehicle and 50 feet from Wilson's vehicle. The facts observed by Wilson were sufficient to create a reasonable suspicion that defendant was the source of the cigarette and, hence, were sufficient to support Wilson's stop of him. The majority errs in concluding otherwise.