## STATE OF OREGON, *Appellant,*
### *v.*
## ROBERT LEE PERRY, *Respondent.*
## (Nos. DA 142861, DA 142872, CA 11904)
591 P2d 379

W. Benny Won, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Frank Noonan, Portland, argued the cause for respondent. With him on the brief was Winfree & Noonan, Portland.

Before Schwab, Chief Judge, and Thornton, Lee and Gillette, Judges.

THORNTON, J.

## THORNTON, J.

Defendant, a Washington resident traveling through this state, was charged in the District Court for Multnomah County with (1) Unlawful Possession of a Weapon in violation of state law, and (2) Carrying a Loaded Firearm in violation of a Portland city ordinance. Prior to trial, defendant moved to suppress the weapon on the ground that the seizure was unlawful. The trial judge granted the motion and the state appeals, assigning as error the granting of the motion to suppress.

Essentially, this is a case where the police stopped an automobile on the basis of apparently erroneous information.

The facts involved are as follows:

Officer Wilson of the Oregon State Police at approximately 3:15 a.m. on January 2, 1978, was patrolling northbound on Interstate 5 near Tualatin. He noticed defendant's automobile also traveling north and observed the vehicle weaving within its lane. Officer Wilson, while continuing to follow defendant's automobile, ran a radio check on the registration for the license plates on defendant's car. He was informed that the state computer showed that the vehicle was registered to a "Richard Perry," whose year of birth was 1934. He was also advised that there was an outstanding felony warrant for this person. By this time, the two vehicles had traveled approximately five miles from the initial point where the officer had first observed defendant's car and had entered the city limits of Portland.

Based on the above information, Officer Wilson, aided by Officer Nelson, then stopped defendant's car. Wilson asked defendant for his operator's license. Defendant immediately presented the officer with a Washington driver's license, which bore the name "Robert Lee Perry." The year of birth shown on that license was 1945. The officers then radioed from

[39]

Wilson's patrol car and ran a radio check on defendant's operator's license. The radio check, which took five to ten minutes, indicated that there were no outstanding warrants for Robert Lee Perry. The officers returned to defendant's car and asked to see the vehicle registration, in an attempt to verify either the 1934 year of birth given to Wilson in the radio report, or the 1945 year of birth listed on defendant's operator's license.[1] Defendant, who was sitting in the driver's seat, thereupon reached across and opened the glove compartment. The officers thereupon observed a revolver in the compartment, which they immediately seized. After a brief discussion, defendant was issued a citation to appear in court for unlawful possession of a weapon and allowed to leave the scene. The officer testified on cross-examination by the trial judge that he stopped the defendant on the basis of the information received on the computer check.

Defendant testified as follows: that Officer Wilson followed him for about five miles; that his car had not been weaving and that he had not been drinking; that when he was stopped by the officers and produced his driver's license, he inquired as to why he was stopped; that Officer Wilson stated, "A felony has been committed and the person looks like you"; that after tendering his operator's license he was directed to get back into his car; that the officers returned to Wilson's patrol car and sat there for about an hour, after which they returned to defendant's vehicle; that Officer Wilson asked, "Is this your car?"; that defendant indicated that it was; that Officer Wilson then asked to see the vehicle registration; that defendant opened the glove box and was searching for the registration when the officers observed the gun.

The trial court made the following Findings of Fact in its order granting motion to suppress the evidence:

"1. That the defendant was driving on Interstate 5 on January 2, 1978, at about 3:30 a.m., and OSP

---

[1] Officer Wilson testified that new vehicle registrations now carry the date of birth of the registrant.

Trooper Wilson noticed the defendant's automobile and proceeded to follow the car;

2. That the Trooper noted the car weaving within its lane;
3. That there was no evidence of a traffic violation;
4. That the Trooper had no cause to stop the defendant;
5. That there was some indication that the car was registered to a Richard Perry;
6. That subsequent checks revealed that the car was owned by Robert Perry;
7. That there was no search and no arrest."

The court made the following Conclusions of Law:
"1. That the stop was invalid and any evidence observed is to be suppressed;
"2. That the court feels there should be some evidence, other than the trooper's oral testimony of a police radio statement, that there was, in fact, a warrant for Richard Perry."

In support of reversal, the state argues first that Officer Wilson had reasonable cause to stop defendant's auto after he observed it weaving within its lane, and secondly, the officer had reasonable cause to stop defendant's car for investigation inasmuch as the officer had been informed, through a radio check of that vehicle's license plates, that the registered owner of that vehicle was a wanted person; that Officer Wilson's request to see the vehicle's registration constituted a reasonable inquiry under the circumstances.

Defendant answers the above arguing that the trial court correctly found that Officer Wilson had no reason to stop defendant's car. Further, assuming the stop to be lawful at its inception, it became unreasonable when not limited to the immediate circumstances which aroused the officer's suspicion, citing ORS 131.615, which provides:
"(1) A Peace officer who reasonably suspects that a person has committed a crime may stop the person

and, after informing the person that he is a police officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

Contrary to the conclusion of the trial judge, we conclude that the officer had reasonable cause to stop defendant's automobile (a) after he observed it weaving within its lane, and (b) after he had been informed, through a radio check, that the registered owner of that vehicle was a wanted person. That the radio report relied upon by the officer in making the stop turned out to be mistaken does not operate to invalidate the stop. *See State v Schrag*, 21 Or App 655, 536 P2d 461, *rev den* (1975); *State v. Somfleth*, 8 Or App 171, 177, 492 P2d 808, *rev den* (1972).

Nevertheless, we conclude that the trial court reached the correct result for the following reason:

After the officer had inspected the defendant's driver's license, which included a photograph of defendant and bore an entirely different birthdate, and had a check by radio and discovered no criminal record or any outstanding process for defendant, further detention of defendant and his family was not justified. ORS 131.615; *State v. Carter/Dawson*, 34 Or App 21, 578 P2d 790, *rev allowed* 284 Or 521 (1978); *State v. Evans*, 16 Or App 189, 517 P2d 1225, *rev den* (1974).

Affirmed.