529

Argued and submitted December 19, 1983, affirmed June 6, 1984

STATE OF OREGON,
*Appellant,*

*v.*

RUSSELL EUGENE KENNEDY,
*Respondent.*

(B65-280; CA A28914)

683 P2d 116

Robert E. Barton, Assistant Attorney General, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

Robert N. Peters, Eugene, argued the cause for respondent. With him on the brief was Public Defender Services of Lane County, Inc.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Defendant was charged with unlawful possession of a weapon. ORS 166.250. The trial court granted his motion to suppress evidence of the weapon and his statements concerning it. The state appeals. We affirm.

At the omnibus hearing, the arresting officer, Reeves, testified that at approximately 3:45 a.m., on June 6, 1983, he observed a vehicle parked in Skinner's Butte Park, in violation of Eugene City Ordinance Section 4.680(2). After the arrival of a back-up officer, he approached defendant and a male companion, who were asleep in the vehicle. Reeves awakened defendant and his companion and asked them to get out of the vehicle. As they got out, Reeves observed that the vehicle contained a great deal of personal property in the passenger compartment. After a brief preliminary conversation, during which defendant was standing near the vehicle's open door, Reeves asked him if there were any weapons inside the car. Defendant replied, "Yeah, there's a pistol underneath the front seat," took a step toward the front seat and reached down. At that point, Reeves directed the men to step to the rear of the car and put their hands on the trunk deck. He took possession of the pistol, conducted a pat-down search of defendant and asked the men who had driven the car. Defendant responded that he was the driver, that he carried the weapon for protection and that he had placed it under the seat to avoid rolling on it while sleeping.

After consulting with the back-up officer, Reeves placed defendant under arrest for possession of a concealed weapon. He was then placed in the police car and given *Miranda* warnings. His companion was not arrested but was left at the scene with the vehicle.

Reeves testified that his purpose in contacting defendant and his companion was merely to advise them that they were not allowed in the park at that hour and that he had no intention of arresting them for the city ordinance violation. He indicated, however, that when defendant left the car, he was being "detained" and was not free to leave. He testified that, although he had no specific reason to think that there was a gun in the car, he asked the question about the weapon for reasons of safety, because it was late at night and the car was filled with personal belongings.

The court granted defendant's motion to suppress evidence of the gun and his oral statements concerning it on the ground that the evidence was secured in violation of defendant's *Miranda* rights. The court concluded as a matter of law that, even though the initial contact between defendant and the police only constituted a "stop" within the meaning of ORS 131.615, defendant was in custody and entitled to his *Miranda* rights from the moment he stepped out of the car in response to the officer's directive.

The state argues first that the encounter between the officers and defendant did not rise to the level of a stop and, even assuming that it did, the question about the weapon was nonetheless within the officers' permissible scope of inquiry. A second argument is that defendant was not in custody or its functional equivalent for purposes of *Miranda* at the time of the inquiry. Finally, the state suggests that, assuming that defendant can be deemed to have been in custody, the inquiry was one directed to the officers' safety and thus was admissible even in the absence of *Miranda* warnings.

Because the trial court concluded that defendant was in custody and suppressed the evidence on the ground that it was secured in violation of defendant's *Miranda* rights, we first consider that issue. We begin with an examination of the historical facts found by the trial court which, supported as they are by the evidence, are binding on this court. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). The trial court found as facts: (1) Reeves contacted defendant and Downey in a parked car in Skinner's Butte Park only because he believed that they were violating a city ordinance; (2) Reeves asked defendant and Downey to get out of the car so that he could tell them that they were not allowed to remain in the park at that hour of the morning; (3) Reeves could see numerous personal belongings in the car, thought the men might be in the process of moving and asked defendant if there were any weapons in the car; (4) Reeves was "detaining" defendant when he first got out of the car, and he was not then free to leave; and (5) before discovering the gun, Reeves did not intend to arrest either defendant or Downey for violation of the city ordinance.

To determine whether under those facts defendant was in "custody" within the ambit of *Miranda,* we apply the

standard articulated by the Supreme Court in *State v. Roberti,* 293 Or 236, 646 P2d 1341(1982). We have concluded that that case stands for the proposition that a critical event for *Miranda* warnings occurs when an officer arrives at a decision to arrest a defendant, even if the officer had decided to delay communicating that intention to the defendant until after further investigation. *See State v. McConnville,* 67 Or App 601, 679 P2d 1373 (1984); *State v. Wells,* 58 Or App 617, 650 P2d 117, *rev den* 295 Or 446 (1983). Applying the *Roberti* standard to the facts, we conclude that the officer's question regarding weapons was posed in a non-custodial situation that did not in itself trigger the necessity for *Miranda* warnings. As found by the trial court, the officer's intent in contacting defendant was merely to advise him of the violation and ask him to leave; the officer did not form an intent to arrest defendant until after the question about weapons and the subsequent discovery of the gun in the car. Nothing in the evidence suggests that, without the discovery of the gun, defendant would not have been free to leave as soon as Reeves had told him about the city ordinance violation. That defendant was not free to go from the time the officer directed him to leave the car is not the determinative factor. Assuming that Reeves had a right to stop defendant to inquire about the violation, he had a concommitant right to detain him to make that inquiry without advising him of his *Miranda* rights.[1] ORS 131.615; *State v. McConnville, supra,* 67 Or App at 605.

We must next determine, therefore, whether the encounter was a "stop" authorized under ORS 131.615. A stop is "a temporary restraint of a person's liberty by a peace

[1] Our decision in *State v. Bozgoz,* 67 Or App 761, 679 P2d 1377 (1984), is not to the contrary. There the defendant was stopped by an officer who had observed him driving erratically and at an excessive rate of speed. The officer requested the defendant's driver's license; the defendant had difficulty locating it. Upon procuring the defendant's driver's license, the officer turned on a tape recorder. He told the defendant that he noted a strong odor of an alcoholic beverage coming from near the defendant's person and described to the defendant details of his erratic driving. The defendant responded by requesting the return of his license; the officer refused to return it, but continued to ask questions and requested the defendant to perform field sobriety tests, which he declined to do. Although the officer testified that he only decided to arrest the defendant after several more minutes of conversation, from all the evidence we concluded that the officer would not have permitted the defendant to leave, at least from the time he refused to return the defendant's driver's license. We held, therefore, that the defendant was at that point in custody for *Miranda* purposes. 67 Or App at 765.

officer lawfully present in any place." ORS 131.605(5). A police-citizen encounter may be converted into a stop of statutory proportion by a show of authority. *See State v. Warner,* 284 Or 147, 162, 585 P2d 681 (1978). Here, two uniformed police officers contacted defendant and his companion, who were sleeping in a parked vehicle in apparent violation of a city ordinance. Reeves ordered defendant out of the car; according to Reeve's own testimony, defendant at that point was being detained, albeit for limited purposes. We conclude that that show of authority and temporary restraint constituted a stop under ORS 131.615.

We note, and it is undisputed, that Reeves had ample reason to suspect that defendant had violated a city ordinance. The initial stop, therefore, was within the authority granted by ORS 131.615(1):

> "(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a police officer, make a reasonable inquiry."

The permissible scope of inquiry during such a stop, however, is limited by ORS 131.615(3):

> "(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

Accordingly, we must decide whether the inquiry about the possible presence of weapons in the vehicle was reasonably limited to the immediate circumstances that aroused the officer's suspicion: defendant's presence in a vehicle apparently parked in violation of a municipal ordinance. In this case, we conclude that the relationship between those circumstances and that question is too tenuous. The immediate circumstances that aroused the officer's suspicion were that it was 3:45 a.m., that the car was parked in a city park during hours when the park was closed, that two men were sleeping in the car and that there were a number of personal possessions in the car. There was no indication that a weapons-related offense had occurred; Reeves, in fact, testified he had no specific reason to think that there was a weapon in the car. We conclude, therefore, that the weapons-related question was unrelated to the suspicious circumstances and thus exceeded the permissible scope of questioning under ORS 131.615(3). It

follows that the statements made in response to that question and the weapon seized were products of an illegally broad search. The trial court did not err in suppressing that evidence.

Because we find that defendant was not in custody for purposes of *Miranda,* we do not discuss the state's contention that, because the question was one directed to the officers' safety, the inquiry should be excepted from the *Miranda* prophylaxis.

Affirmed.