Argued and submitted December 20, 1984, reversed and remanded for new trial
April 17, 1985

# STATE OF OREGON,
*Respondent,*

*v.*

# JOHN FRANKLIN SMITH,
*Appellant.*

(34990; CA A31383)

298 P2d 973

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Brenda J. Peterson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Salem and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

**YOUNG, J.,**

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992(4). He assigns as error the trial court's pretrial order denying his motion to suppress, which was based on the ground that certain evidence was the fruit of an allegedly unlawful stop. We reverse.

On August 2, 1983, at 1:00 a.m., officers Mack and Snider noticed an unattended portable cooler in a park. It was similar to a cooler that was reported stolen in the park two days earlier. The officers were dispatched to another call before they could investigate. They returned at 1:30 a.m. and saw defendant sitting with Walker near the cooler. As the officers stopped their patrol car, defendant and Walker began walking away toward a gate in a fenced area. Walker carried the cooler. Defendant carried an object that the officers could not identify. Mack called out, "Hey, could we talk to you guys for a second?" Walker returned with the cooler, but defendant returned empty handed.

Mack asked them what they were doing in the park so late at night. Walker said that they were drinking a few beers. When asked about the cooler, Walker responded that it was his and, at the officers' request, allowed them to look inside. Mack testified that, after talking to Walker, they had no proof that the cooler was not his. The officers asked for their names and identification. Defendant produced a food stamp identification card. The names and birthdates were radioed to the dispatcher to check for outstanding warrants. Mack asked defendant and Walker whether they had seen anyone who matched the description of a suspect who had robbed a nearby Safeway store earlier that night. Defendant and Walker were also told that a city ordinance prohibited them from using the park at that time of night.

While Mack was talking to Walker and defendant, Snider retraced defendant's steps and returned with a purple gym bag. He asked, "Whose bag is this?" Defendant claimed it. Snider then asked, "What's in it?" Defendant replied, "About a quarter to a half pound of pot."[1] Defendant denied

---

[1] To which Snider replied, "Oh, shit," apparently in exasperation at the sudden expansion of the breadth of his policeman's lot.

consent to search the bag. He was arrested, advised of his Miranda rights and taken to the police station.

At trial, the court found that the encounter, from the time when defendant was first hailed until his arrest, lasted five to eight minutes and that roughly three to five minutes were spent waiting for the warrant check. The court also found that the questioning concerning the bag occurred while the officers were waiting for the warrant check. Those facts are supported by the evidence and are therefore binding on this court. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

At the police station defendant was taken to an interview room. He was told that the officers would attempt to procure a search warrant. After 20 to 25 minutes talking with the officers, defendant consented to a search of the bag, because he had already told the officers what was in it.

The court concluded as a matter of law that the officers' conduct constituted a "stop," as defined by ORS 131.615,[2] and that the stop was justified by the reasonable suspicion that defendant and Walker were in possession of a stolen cooler. The court then concluded that, once the officers had satisfied their suspicions concerning the cooler, the subsequent detention of defendant while the warrant check was being made was unreasonable, because it was unrelated to the initial purpose of the stop. The court nevertheless concluded that the gym bag and defendant's statements concerning ownership and contents of the bag were admissible, because the discovery of the gym bag was not the fruit of the unlawful

---

[2] ORS 131.615(1) provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

ORS 131.605(5) provides:

"(5) A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

The statutes were intended to restate the rule in *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), which analyzed "stops" under the Fourth and Fourteenth Amendments to the United States Constitution. *See State v. Warner,* 284 Or 147, 164, 585 P2d 681 (1978). Defendant raises both statutory and constitutional arguments concerning stops. We determine this case based on the statute. However, we also rely on state and federal constitutional cases in determining whether a stop occurred and whether the inquiry following the stop was reasonable.

detention. Defendant disagrees with the court's final conclusion. The state disagrees with the court's initial conclusions, arguing that the encounter did not constitute a stop at all or, alternatively, that the stop was not overly intrusive.

■ ■ In *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978), the Supreme Court distinguished three types of encounters between police officers and citizens: an arrest, which must be based on probable cause; a stop, which is a "temporary restraint of the citizen's liberty" justified by reasonable suspicion of criminal activity; and "mere conversation" without restraint of liberty, which requires no justification. The distinguishing feature of a stop is that the police by "physical force or *show of authority* * * * in some way restrained the liberty of a citizen." *State v. Warner, supra,* 284 Or at 162. (Emphasis in original.) A citizen has been restrained when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968); *see State v. Spenst,* 62 Or App 755, 662 P2d 5, *rev den* 295 Or 447 (1983); *State v. Canape,* 46 Or App 453, 611 P2d 1190 (1980); *State v. Brown,* 31 Or App 501, 570 P2d 1001 (1977). Whether a stop has occurred is a question that must be answered on the basis of the particular facts of each case. *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981).

■ The crucial question in this case is whether the warrant check transformed the encounter from mere conversation into a stop. That is a question we left open in *State v. Hanna,* 52 Or App 503, 628 P2d 1246, *rev den* 291 Or 662 (1981), where the officer hailed the defendant, told him about a burglary and asked his name and what he was doing. The officer then asked for I.D. Defendant gave a current address which was different from the address on the I.D. The officer took the I.D. to the patrol car and radioed the dispatcher to check for warrants. The check came back clear, and defendant left the scene. The current address later connected defendant with the burglary. We held that the encounter constituted mere conversation. We were not required to determine whether the use of the I.D. to check for warrants elevated the encounter to a stop, because defendant volunteered the information that resulted in his arrest before the officer took the I.D. and ran the check. *State v. Hanna, supra,* 52 Or App at 509 n 5.

In contrast, the incriminating statement in this case was obtained in response to questioning that occurred while the officers were waiting for the record check to come back. We agree with the trial court that the use of defendant's identification to check for arrest warrants constituted a show of authority that would lead a reasonable citizen in defendant's circumstances to believe that he was not free to leave unless the warrant check came back clear. We therefore hold that the encounter constituted a stop.

■■ We also agree with the trial court that the similarity in appearance between Walker's cooler and a cooler recently stolen in the same park gave the officers a reasonable suspicion that Walker and defendant were in possession of stolen property. The stop was justified. The question is whether the officers exceeded the permissible scope of the inquiry under ORS 131.615(2) and (3), which provide:

> "(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

> "(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

Running a check through the police dispatch facility to confirm identification and to check for outstanding warrants is a procedure that commonly accompanies traffic stops. *See, e.g., State v. Perry,* 39 Or App 37, 591 P2d 379 (1979); *State v. Carter/Dawson,* 34 Or App 21, 578 P2d 790 (1978), *aff'd* 287 Or 479, 600 P2d 873 (1979). In that context, we have never held that the warrant check itself exceeded the lawful basis for the stop. *See State v. Perry, supra,* 39 Or App at 42; *State v. Carter/Dawson, supra,* 34 Or App at 32. A warrant check may become unreasonable under ORS 131.615(2) if, for instance, it takes an inordinately long time to complete. In this case, the check was initiated in conjunction with the investigation concerning the cooler, and it was completed within three to five minutes. We hold that the warrant check did not exceed the legitimate scope of the stop.

■ ■ The next question is whether Snider's questions concerning the gym bag were within the lawful scope of the stop. Under ORS 131.615, an inquiry made during a lawful stop is reasonable only if it is limited to the immediate circumstances that aroused the officer's suspicion. *See State v.*

*Kennedy,* 68 Or App 529, 683 P2d 116 (1984). The questioning concerning ownership and contents of the bag was not related to the officers' suspicions concerning the cooler. Snider had no reason to believe that the bag contained contraband when he asked defendant what was in it. He testified that he asked the question because he was "curious." We hold that the question concerning the contents was neither limited to the lawful basis for the stop nor supported by any independent suspicion of criminal activity. The court erred in failing to suppress defendant's statement concerning the contents.

 The final question is whether defendant's consent to search the bag was voluntary. Determining the validity of consent to a search requires a review of the totality of the facts and circumstances to see whether the consent was given by defendant's free will or was the result of coercion, expressed or implied. *Schneckloth v. Bustamonte,* 412 US 218, 93 S Ct 2041, 36 L Ed 2d 854 (1973); *State v. Kennedy, supra.* The burden on the police to show voluntariness when consent occurs after illegal police conduct is greater than when no illegality has occurred. *State v. Kennedy, supra,* 290 Or at 502. In this case, Snider testified that the reason defendant gave his consent was that he had already told the officers what was in the bag. We find that the consent resulted directly from the exploitation of the illegality. The consent was not voluntary. The trial court erred in failing to suppress the contents of the bag.

Reversed and remanded for a new trial.[3]

---

[3] The analysis in *Oregon v. Elstad,* 53 USLW 4244, ___ US ___, ___ S Ct ___, ___ L Ed 2d ___ (March 4, 1985), does not require a different result.