Argued and submitted October 28, 1988, affirmed June 21, 1989

## STATE OF OREGON,
*Respondent,*

*v.*

## DARL JULIE OLNEY,
*Appellant.*

(87-509; CA A47947)

775 P2d 914

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Frank Gruber, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant appeals her conviction for possession of a controlled substance. ORS 475.992(4)(b). She assigns as error the trial court's denial of her motion to suppress evidence seized from her purse, arguing that her consent to search the purse was involuntary. We affirm.

On January 20, 1987, approximately fifteen Clackamas County Deputy Sheriffs executed a search warrant at the residence of Benjamin Olney, who was suspected of being involved in a drug and stolen property ring. The warrant authorized the officers to search for controlled substances in the residence, surrounding property and outbuildings. During the search, Deputy Steigleder answered the telephone at the residence. A woman, who identified herself as "Alice," stated that she wanted to buy narcotics and that she would be there in about thirty minutes. Approximately fifteen to thirty minutes later, defendant drove in the driveway at the Olney house and got out of the car. Steigleder believed that defendant might be "Alice" or was otherwise connected to the criminal activity at the residence. He and three other officers approached her and a man who was with her, asked for their identification and patted them down. Defendant produced a driver's license, and Steigleder ran a warrant check on her. He found that she had no outstanding warrants and that her name is Darl Julie Olney, as the license said. Steigleder then asked if he could search her purse, and she handed it to him. He searched it and found a small quantity of marijuana and a bindle of methamphetamine.

Under ORS 131.615, a police officer may stop a person and make a reasonable inquiry when the officer has a reasonable suspicion that the person has committed a crime. Defendant admits that the officers' initial stop and request for her identification was proper, because it was based on the belief that she was "Alice," the woman who had just called the residence. However, she argues, relying on ORS 131.615(3), that when Steigleder learned that her name was not "Alice," the inquiry should have ended. ORS 131.615(3) provides:

> "The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

Defendant asserts that Steigleder's request to search her purse exceeded the permissible scope of inquiry and that, because her consent to the search of her purse followed that illegal police conduct, her consent was involuntary.

1.    We conclude that Steigleder's request to search defendant's purse did not exceed the permissible scope of inquiry. Defendant's arrival at the house at about the same time that the woman on the telephone said that she would be there gave the officer a basis for a reasonable suspicion that defendant was involved in the drug activity at the house. The fact that he determined that her name was not "Alice" did not necessarily dissipate the basis for his suspicion.

Defendant relies on *State v. Smith,* 73 Or App 287, 698 P2d 973 (1985), and *State v. Kennedy,* 68 Or App 529, 683 P2d 116 (1984), in arguing that the officer's request to search the purse exceeded the scope of the permissible inquiry. However, both of those cases involved situations where the officer's inquiry had little or no relationship to the purpose of the stop. In *Smith,* the defendant was stopped because police saw him and a companion with a cooler that matched the description of one stolen in the area a few days earlier. After they had inspected the cooler, the police saw the defendant with a gym bag and asked him what was in it. He replied that it contained marijuana and, after he was arrested, consented to a search of the bag. *State v. Smith, supra,* 73 Or App at 289. We held that the questions concerning the gym bag exceeded the permissible scope of inquiry, because the gym bag had nothing to do with the initial purpose of the stop. In *Kennedy,* the defendant was stopped when he was found sleeping in a car in a park, in violation of a city ordinance. After a preliminary inquiry, the police asked him if he had any weapons in the car, and he replied that there was a pistol under the front seat. The police then searched the car and found the weapon. We held that the inquiry concerning weapons exceeded the permissible scope of the stop, because there was no relationship between the purpose of the stop, *i.e.,* the violation of an ordinance and possession of a weapon. In contrast, here, the request to search defendant's purse was not beyond the legitimate purpose of the stop, which was to investigate whether she was involved in the drug activity at the house.

2.    In order to determine whether defendant's consent to

the search of her purse was voluntary, the totality of the circumstances must be examined to see whether her consent was given by her free will or was the result of coercion, express or implied. *State v. Kennedy,* 290 Or 493, 502, 624 P2d 99 (1981). The trial court concluded that the consent was voluntary, finding that "[t]he atmosphere was jovial apparently or at least it was nonthreatening." We agree. There is no indication that any force, verbal threats or promises were used. Although there apparently were other officers in the vicinity, only Steigleder was in defendant's immediate area.[1] Defendant was not questioned for a lengthy period of time; her consent was given about eight minutes after the officer's initial contact with her. We conclude that, under the totality of the facts and circumstances, the consent was voluntary.

Affirmed.

---

[1] Defendant asserts that several of the officers had their guns drawn and that that created a coercive atmosphere. However, the trial court found defendant not credible, and there was no other evidence that guns were drawn. Further, even defendant admits that guns were not directed at her or used to coerce her.