Argued and submitted February 28, reversed and remanded July 19, reconsideration denied August 25, petition for review denied October 3, 1989 (308 Or 405)

# STATE OF OREGON,
*Appellant,*

*v.*

# TODD ALEX HANDRAN,
*Respondent.*

(10-87-03818; CA A48022)

777 P2d 981

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Lawrence J. Hall, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Buttler, P. J., dissenting.

## WARREN, J.

Defendant was charged with theft in the first degree. ORS 164.055. The state appeals the trial court's order suppressing evidence seized by the police without a warrant while searching defendant's apartment for another suspect. We reverse.

At 10:30 p.m., Officer Putnam was dispatched to a Safeway store, where employes told him that two men had stolen four 12-packs of Budweiser beer. The employes described the suspects and estimated their ages to be 16 and 20. Less than two hours later, Putnam responded to a burglary call at an apartment located approximately one block from the Safeway store. The residents, Langlois and Hahn, reported that a stereo cassette player and two speakers had been stolen from their apartment sometime between 10:30 and 11:15 that evening. They told Putnam the brand names of the equipment and gave him a detailed description of the items and the model number of the cassette player. Langlois suspected the occupants of apartment 34, which was next door, because "they seemed kind of suspicious." His description of those residents matched the description of the suspects in the Safeway theft.

As part of the burglary investigation, Putnam talked with Yentz, another resident of the apartment complex. Yentz had no information about the burglary, but he told Putnam that at approximately 10:40 p.m. he had looked out of his window and had seen two young men who matched the description of the suspects in the Safeway theft carrying four half-cases of Budweiser beer up the stairs of the apartment building.

On the basis of the descriptions by Yentz and the Safeway employes, Putnam and another officer decided to contact the residents of apartment 34 solely to investigate the beer theft. Before knocking on the door of the apartment, Putnam stood outside for several minutes and heard two male voices and a female voice. He then knocked on the door, and defendant opened it. Putnam saw defendant and a woman, but he did not see the second man whose voice he had heard. He also saw approximately 20 Budweiser beer cans scattered around the apartment. Defendant, age 19, appeared to have been drinking. When Putnam told him that he wanted to talk to the other man, defendant insisted that no one else was in

the apartment. Putnam arrested defendant for theft of the beer.

After defendant was handcuffed and turned over to the other officer, Putnam, without a warrant, entered the apartment to seize the beer as evidence of the theft and to look for the other suspect. He walked into the bathroom, where he thought the suspect might be hiding, and saw two stereo speakers in the shower stall. He also saw a cassette stereo player on the floor of an open closet. The equipment matched the description of the property taken in the burglary of the apartment next door. Putnam found the other suspect, Prim, behind the refrigerator in the kitchen and arrested him. The woman was not arrested. Putnam then seized the stereo components and placed them on a table in the living room. Langlois and Hahn identified the items as the property stolen from their apartment, and Putnam returned the equipment to them.

The trial court held that Putnam's warrantless entry into defendant's apartment, and the search for and arrest of Prim, were valid. It held, however, that the seizure of the stereo equipment and the transportation of those items to the living room was an unlawful search and seizure, because the police had failed to get a warrant and the seizure was not justified under the "exigent circumstances" exception to the warrant requirement, because there was no exigency necessitating the immediate seizure of those items.

The state does not contend that the seizure of the stolen stereo equipment was justified as incident to defendant's or Prim's arrest for theft of the beer. It argues only that the seizure was valid under the "plain view" doctrine. Defendant does not challenge the trial court's holding that Putnam's entry into the apartment to search for and to arrest Prim was valid, and we do not decide that question. Defendant contends only that the seizure of the stereo equipment without a warrant or exigent circumstances violates Article I, section 9, and the Fourth Amendment. He further argues that, even if the stereo components were in plain view, they were not subject to seizure, because Putnam did not "know" at that time that they were stolen. According to defendant, the property was identified as stolen only after Langlois and Hahn identified it as such.

We address, first, whether the seizure of the stereo equipment violates Article I, section 9. The "plain view" doctrine was originally developed as an exception to the Fourth Amendment warrant requirement. *See Texas v. Brown,* 460 US 730, 737-39, 103 S Ct 1535, 75 L Ed 2d 502 (1983); *Coolidge v. New Hampshire,* 403 US 443, 464-65, 91 S Ct 2022, 29 L Ed 2d 564 (1971); *State v. Keller,* 265 Or 622, 625, 510 P2d 568 (1973). Although Oregon courts have described the doctrine in cases under the Fourth Amendment, they have not determined its status under Article I, section 9.

The plain view doctrine permits officers to seize property if: (1) there is a prior valid intrusion; (2) the discovery is inadvertent; and (3) it is immediately apparent to the police that the items that they observe may be evidence of crime, contraband or otherwise subject to seizure. *Texas v. Brown, supra; Coolidge v. New Hampshire, supra.*[1] "[P]lain view alone is never enough to justify the warrantless seizure of evidence." *Coolidge v. New Hampshire, supra,* 403 US at 468. Because the entry into the apartment and the search for Prim are not challenged, we treat them as lawful and analyze the case on that basis. The plain view doctrine is better understood as an extension of an officer's justification for entering the premises than as an independent exception to the warrant requirement. *Texas v. Brown, supra,* 460 at 738-39. The question is whether it is also part of the law of Oregon.

**1.** In considering Putnam's authority under state law, we first examine the relevant statutes. ORS 133.525 *et seq* establish what an officer can do with a warrant. Although we usually refer to a warrant only as a "search" warrant, it actually authorizes both the *search for* and the *seizure of* property. ORS 133.565.[2] In ORS 133.585 the legislature provided for the

---

[1] The United States Supreme Court has held that application of the doctrine requires that an officer have probable cause, and not mere reasonable suspicion, to believe that the property is subject to seizure. *See Arizona v. Hicks,* 480 US 321, 326, 107 S Ct 1149, 94 L Ed 2d 347 (1987).

[2] ORS 133.565 provides, in part:

"(2) The warrant shall state, or describe with particularity:

"* * * * *

"(b) The name of the person to be searched, or the location and designation of the premises or places to be searched;

"(c) The things constituting the object of the search and authorized to be seized[.]"

seizure of certain objects discovered in the course of the execution of a search warrant:

> "The scope of search shall be only such as is authorized by the warrant and is reasonably necessary to discover the persons or things specified therein. Upon discovery of the persons or things so specified, the officer shall take possession or custody of them and search no further under authority of the warrant. *If in the course of the search the officer discovers things, not specified in the warrant, which the officer has probable cause to believe to be subject to seizure under ORS 133.535 which the officer did not have probable cause to expect to find, the officer shall also take possession of the things discovered.*" (Emphasis supplied.)

ORS 133.535 provides that an officer may search for and seize:

> "(1) Evidence of or information concerning the commission of a criminal offense;

> "(2) Contraband, the fruits of crime, or things otherwise criminally possessed;

> "(3) Property that has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense; and

> "(4) A person for whose arrest there is probable cause or who is unlawfully held in concealment."

What may be seized after a lawful but warrantless entry is necessarily limited to what the officer could have seized after entry under a valid warrant. We hold that, if an officer is where he has a right to be, under either a warrant or an exception to the warrant requirement, he may seize anything that he discovers, if the requirements of ORS 133.585 are met.

**2, 3.** Here, Putnam did no more than what a warrant would have authorized him to do. As we said before, defendant does not contend that Putnam was not legitimately inside the apartment to search for Prim or that he had reason to expect that he would find the stereo components. Therefore, only the second element in ORS 133.585 is at issue. Putnam did not have to "know" that the property was stolen when he initially saw it. ORS 135.585 requires only that an officer have probable cause to believe that an object is subject to seizure. Probable cause does not require certainty. *State v. Herbert,* 302 Or 237, 241, 729 P2d 547 (1986). On the basis of the burglary

investigation and the description of the stolen property, Putnam had probable cause to believe that the stereo equipment was the fruit of a crime. His actions complied with the statute.

4. The remaining question is whether the portions of ORS 133.585 emphasized in the quotation above are consistent with Article I, section 9. We conclude that they are, because such a seizure satisfies the reasonableness requirement of that provision. The plain view doctrine is not a pretense for an officer who has probable cause to believe that evidence is present to avoid seeking a warrant if there is an opportunity to do so. However, an officer who has already made a lawful intrusion need not close his eyes to seizable items that he did not expect to find but that he sees as a consequence of that intrusion. That conclusion is also consistent with *State v. Owens,* 302 Or 196, 202, 729 P2d 524 (1986), in which the court held that the seizure of the defendant's clutch purse, found during a search incident to her arrest, was valid under Article I, section 9, because the officer had lawfully seen inside the purse what he had probable cause to believe was contraband.

5. The seizure did not violate the Fourth Amendment. *Arizona v. Hicks, supra; Texas v. Brown, supra; Coolidge v. New Hampshire, supra.*

The trial court erred in suppressing the evidence.

Reversed and remanded.

**BUTTLER, P. J.,** dissenting.

Because I do not believe that the officers were authorized to enter the apartment to search for and arrest Prim, I would not reach the issue decided by the majority and would affirm the trial court on different grounds. Accordingly, I dissent.

The state contends that the warrantless entry into defendant's apartment was lawful,[1] because there were

---

[1] The majority says that defendant does not challenge the trial court's holding that the entry to search for and arrest Prim was valid. Although defendant does not, in so many words, contend that the trial court's conclusion on that point was error, he does, in apparent response to the state's argument that the entry and search were lawful, devote over four pages of his brief to quoting from and discussing cases relating to the authority of the police to enter a defendant's premises without a warrant. I do not see how we can say that the issue is not joined on appeal. We may affirm the trial court for reasons different from those it stated.

exigent circumstances that justified immediate entry: "to find and arrest the second suspect (Prim), and to seize the evidence of the beer theft." Those are two separate and distinct theories. Officer Putnam did have authority to seize the beer of the type reported stolen, which he saw when he arrested defendant at the front door of his apartment. *State v. Bettles,* 45 Or App 9, 607 P2d 216, *rev den* 289 Or 275 (1980).

However, the claim that Putnam was authorized to walk through the entire apartment looking for the other suspect is a different matter. I assume that he had probable cause to believe that the other suspect was in the apartment and that a search warrant to enter the apartment could have been obtained. Without a warrant, further intrusion into the apartment was not permissible, unless there were exigent circumstances. *State v. Peller,* 287 Or 255, 598 P2d 684 (1979); *State v. Olsen,* 287 Or 157, 598 P2d 670 (1979).[2] Apparently, the state believes that the possibility that Prim might try to escape if the officers took the time to obtain a warrant created an exigent circumstance. In *Peller,* however, the court expressly rejected that contention:

"We do not agree, however, that the mere possibility that defendant could make a break if he were so inclined gives rise to exigent circumstances when there is no indication that he is, in fact, so inclined.

"* * * * *

"Absent any indications that escape was imminent, the officers in the present case should have staked out the house and obtained a warrant before entering." 287 Or at 264.

Because Putnam had no authority to intrude into defendant's apartment more than was necessary to seize the beer that was evidence of the theft for which defendant was arrested, I agree with the trial court, albeit for different

---

[2] In *Olsen,* the court discussed ORS 133.235(5), which provides:

"In order to make an arrest, a peace officer may enter premises in which the officer has probable cause to believe the person to be arrested to be present."

It held that that statute would be unconstitutional if it were applied when there are no exigent circumstances. 287 Or at 165.

reasons, that the other evidence seized as a result of the unlawful search must be suppressed.[3]

---

[3] The trial court concluded:

"The court finds that Officer Putnam's entry into defendant's apartment and subsequent search and discovery of Mr. Prim and arrest of Mr. Handran and Mr. Prim was warranted as legitimate exercise of police authority and not subject to constitutional restrictions. However, the court finds that the seizure of the stereo speakers and receiver, and transportation of those from the bedroom to the main room for display was an unlawful search and seizure in that it was not authorized pursuant to a lawfully obtained warrant and not subject to an exception to the warrant requirement of exigent circumstances, in that, there was no reason for Officer Putnam to believe that there was any exigency which required the immediate seizure of these items, in that there was no one with a motive to destroy or hide the items except Mr. Handran and Mr. Prim and both Mr. Handran and Mr. Prim were in custody."