Argued and submitted May 30, suppression order vacated and remanded with
instructions September 5, 1990

## STATE OF OREGON,
*Appellant,*

*v.*

## MARK BRADLEY NELSON,
*Respondent.*

(88-3764A-C-3; CA A61573 (Control))

## STATE OF OREGON,
*Appellant,*

*v.*

## RANDALL DEAN NELSON,
*Respondent.*

(88-3764B-C-3; CA A61574)
(Cases Consolidated)

796 P2d 1250

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for respondents. With her on the brief was Sally L. Avera, Public Defender, Salem.

Before Joseph, Chief Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendants moved to suppress everything seized in the search of their home.[1] The trial court granted the motion, and the state appeals pursuant to ORS 138.060(3). We vacate the order and remand for further findings.

While on parole, defendant Randall Nelson was assigned to Parole Officer Hickey. On November 30, 1988, Hickey went to Randall's home to look for him. Randall's brother, defendant Mark Nelson, answered the door. Hickey testified:

"Q   And can you tell the Court the conversation that ensued between you and Mr. Nelson at that point?

"A   Yes, I asked Mr. Nelson — at that time I didn't know who he was. I asked Mr. Nelson if Randy was home, and he said 'Yes, just a minute, I'll get him.'

"Q   Okay, and did he leave the door open, or did he — what happened at that point?

"A   I believe the door had already been closed by that point, and Mr. Mark Nelson went into a bedroom where he said that Randy was in bed, and he came back out into the living room and sat down in a chair. Before he sat down, I saw a bindle of what appeared to be a controlled substance on the chair, and as Mr. Nelson sat down, he put his leg over the bindle."

Hickey seized the bindle.[2] The parties agree that Mark Nelson allowed Hickey to enter and that the door was closed behind Hickey. No other evidence was presented as to how Hickey got into the house.

At the hearing on the motion to suppress, the state argued that Hickey was authorized to enter the home, either because Mark Nelson invited him in or because of a condition of Randall Nelson's parole.[3] The trial court did not address the first issue. On the second, it held that the parole period had expired on November 9, 1988, and that Hickey was not

---

[1] Defendants were indicted in one indictment, and the motions to suppress were heard jointly. We consolidated their appeals on the state's motion.

[2] Hickey contacted the police, who searched the house. The state does not argue that the evidence found in that search should not have been suppressed.

[3] The parole agreement states: "Parolee is to submit person, residence, vehicle and property to search by a parole officer having reasonable grounds to believe such search will disclose evidence of parole violation."

lawfully on defendants' premises. The state does not challenge the court's holding that the parole period had expired, but argues that Hickey was lawfully on the premises by consent and observed the bindle in plain view.

■    Defendants argue that the court's conclusion that Hickey was not lawfully on the premises is a finding that is binding on appeal under *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). We disagree. That is not a factual finding; it is a legal conclusion, which we may review. 250 Or at 487.

■■    Hickey was entitled to approach the house and knock on the door, as any visitor might do. *State v. Ohling,* 70 Or App 249, 253, 688 P2d 1384, *rev den* 298 Or 334 (1984). If Mark Nelson invited him in, then Hickey's presence in the house would have been lawful, and the seizure of the bindle would have been lawful under the plain view doctrine. *State v. Handran,* 97 Or App 546, 777 P2d 981, *rev den* 308 Or 405 (1989); *see State v. Olney,* 97 Or App 310, 775 P2d 914 (1989). One could infer from Hickey's testimony that Mark Nelson invited him in, but that inference is not required by the testimony. Because we cannot say that Mark Nelson consented to the entry as a matter of law, we remand to the trial court to make that determination. Specifically, the court should make findings on the existing record relating to the question of whether Mark Nelson consented to Hickey's entry and make appropriate conclusions based on those findings. *See State v. Maskell,* 101 Or App 521, 792 P2d 106 (1990).

Suppression order vacated; remanded with instructions to make findings of fact whether entry was consensual, and if it was, to deny motion to suppress and, if not, to re-enter order.